MARTIN *against* HAWKS, Sheriff of *Otsego*.

THIS was an action of debt, for an escape. The declaration stated, that the plaintiff, in this action, in *August*, 1816, recovered a judgment, in an action of trespass, assault, battery, and false imprisonment, in this court, against *Jeremiah Robinson*, for 77 dollars and 44 cents ; that a *ca. sa.* was issued thereon, and delivered to the defendant, on the 2d of *November*, 1816, who, on the 30th of *November*, arrested *Robinson*, and on the same day voluntarily suffered him to escape. The defendant pleaded *nil debet*, with notice of a release from the plaintiff. The release was dated the 27th of *November*, 1818, and was as follows ; " I hereby discharge the sheriff in the above (the original) suit, and direct him not to proceed any further with the *ca. sa.* against the said *Jeremiah Robinson*, in my favour, but to return the same satisfied, as I have received in full of the debt, and costs on the same. In witness, &c." The cause was tried at the *Otsego* circuit, before Mr. J. *Platt*.

At the trial, the counsel for the plaintiff offered to prove that the amount of the judgment against *Robinson*, with the exception of six cents, was due to *Ambrose L. Jordan*, the plaintiff's attorney in the original suit, as taxable costs ; that when the *ca. sa.* was delivered to the defendant's deputy, this fact was expressly stated, and the deputy was required to pay the amount, when collected, to the attorney, and not to the plaintiff ; that the deputy, after the arrest of *Robinson*, suffered him to go at large, on his promising to pay the money in a few days ; and that *Robinson* had been required to pay the amount of the judgment to *Jordan*, and not to the plaintiff. The plaintiff's counsel, also, offered to prove

A plaintiff obtained a judgment against a defendant for six cents damages, with costs. The plaintiff's attorney gave notice to the defendant, to pay the amount of the judgment to him and not to the plaintiff, and issued a *ca. sa.* and directed the Sheriff to pay over the money, when collected, to him, and not to the plaintiff, the attorney being entitled to the whole amount of the judgment, except six cents, as his costs. The defendant was arrested ; and the Sheriff voluntarily suffered him to escape: The attorney brought an action for the escape against the Sheriff, in the name of the original plaintiff ; *Held*, that the Sheriff could not avail himself of a release from the original plaintiff, in bar of the action, such release being a fraud upon the attorney, as it was executed, with notice to all the parties of his lien for his costs.

The attorney has a lien on a judgment recovered by his client, for his costs ; and if the defendant, after notice from the attorney, pay the amount of the judgment to the plaintiff, without satisfying the Attorney for his costs, such payment is in his own wrong, and he is liable to the Attorney for the amount of his bill.

Where an assignee recovers a judgment in the name of his assignor, and takes out a *ca. sa.* giving the Sheriff notice of his equitable interest ; and the Sheriff, having arrested the defendant, suffers him to escape, the assignee may maintain an action against the Sheriff, for the escape, in the name of the assignor, which the Sheriff cannot defeat, by taking a release from the nominal plaintiff.

NEW-YORK, that the release, which was executed, after the escape had
October, 1818. been suffered, was executed by fraud and collusion between
MARTIN *Robinson*, the plaintiff, and the sheriff, for the purpose of
v.
HAWKS. preventing the attorney from collecting his costs. Upon
this statement, the judge nonsuited the plaintiff. It was now
moved to set aside the nonsuit, and the case was submitted
to the court without argument.

SPENCER, J. delivered the opinion of the court. It is
fully settled, by a long series of decisions, that courts of
law will take notice of, and protect, the rights of assignees,
against all persons having either express or implied notice
of the trust. (*Johns. Dig.* 40. and the cases there collected.)
It is equally well settled, that the assignor of a chose in ac-
tion, cannot defeat a suit brought in his name, by his as-
signee, by a release to the defendant, who has notice of the
assignment.

If *Jordan* stands in the situation of an assignee, and if
*Martin* is to be regarded as the mere trustee to *Jordan*, for
the amount of the judgment against *Robinson*, then, most
assuredly, *Martin* could not, by his release, defraud his *cestuy
que trust* of the money to which he was entitled.

In the case of *Pinder* v. *Morris*, (3 *Caines' Rep.* 165.)
this court recognized the principle, that if the defendant
pay to the plaintiff the debt and costs, after notice from the
Attorney of the plaintiff not to do so, he pays the costs in
his own wrong. We referred to *Doug.* 238. 4 *Term Rep.*
123. 6 *Term Rep.* 361. as establishing that position.

Lord *Mansfield* held, in the case of *Welsh* v. *Hole*, (*Doug.*
238.) that an Attorney had a lien on the money recovered by
his client, for his costs ; and that, if the Attorney gave notice
to the defendant not to pay, till his bill should be discharged,
a payment by the defendant, after such notice, would be in
his own wrong, and *like paying a debt which has been assign-
ed, after notice.*

In the case of *Read* v. *Dupper*, (6 *Term Rep.* 361.) Lord
*Kenyon* said, the principle had been settled long ago, that
the party should not run away with the fruits of the cause,
without satisfying the legal demands of his Attorney, by
whose industry and expense those fruits were obtained. If

the money, he says, had been paid over, *bona fide,* to the plaintiff, before notice from the Attorney, such payment would have been good; but when it is made in violation of the notice, it cannot be good; and he sanctions Lord *Mansfield's* comparison of the case to that of an assignment of a chose in action; and in *Griffin* v. *Eyles,* (1 *H. Bl.* 122.) the same principle was adopted. In *Turwin* v. *Gibson,* (3 *Atk.* 719.) Lord *Hardwicke* held, that the Attorney, in consideration of his trouble, and the money disbursed for his client, has a right to be paid out of the duty decreed for the plaintiff, and has a lien upon it; and that such was constantly the rule of the court.

It will be observed, that the question now before the court is not whether the lien of the Attorney for his costs is superior to the equity of a defendant, who has a matter of set-off existing against the plaintiff; a different rule has been adopted by this court in such a case.

If the Attorney has a lien on the judgment for his costs, and if he stands in the same equity that he would have done, had the judgment been assigned to him, then I am at a loss to discover why he should be defrauded of that lien, and devested of that equity, when all the parties to this transaction were informed of his lien, and forbidden to do any act which should prejudice it.

The Sheriff, by suffering *Robinson* to go at large, was inevitably fixed with the debt. (1 *Johns. Cas.* 411.) He never could retake the prisoner. Being thus fixed, and to avoid his responsibility, he avails himself of what he had been directed not to do. He takes *Martin's* discharge of the judgment, knowing that no part of it belonged to him, except six cents, and he shelters himself under the release, which *Robinson* also obtained fraudulently; for the case states, that he had been notified not to pay *Martin.* *Martin,* too, was guilty of a fraud, in discharging the execution, for he well knew that he was entitled to no part of it, except the nominal amount of six cents.

Now, it seems to me, that where a discharge has been thus obtained, by fraud in all the parties to it, it cannot be operative, as respects any of the parties; and that we should

NEW-YORK,<br/>October, 1818.<br/><br/>MARTIN<br/>v.<br/>HAWKS

NEW-YORK, not be going further than we have already gone in several
October, 1818. cases, in treating the discharge as fraudulent and void.

MARTIN
v.
HAWKS.

It may be objected, that *Jordan*, the Attorney, is not to be regarded as having a lien on the action for the escape, inasmuch as that is a *tort* not assignable. His claim to a right to prosecute this action grows out of his lien and equity in the original action; and, therefore, it is no answer to this action to say, that it cannot be assigned. See to what a length that objection will go; the assignee of a bond, having given notice to the obligee not to pay it, sues on it, and obtains judgment. He takes out a *ca. sa.*, and when he gives it to the sheriff, notifies him that the debt is his, and to pay it to him only. The sheriff arrests the defendant, and permits him to escape; and then, to avoid his liability, takes a release from the nominal plaintiff. Will this protect him? If it does, then, indeed, the principle that a court of law will notice and protect the assignee of a chose in action, amounts to nothing.

I hold, that he must be protected throughout, and that it would be just as inequitable to suffer him to be cheated out of the fruits of the judgment, as it would be to suffer the assignor to cheat him out of the means of obtaining a judgment. The court are, therefore, of opinion, that the judge erred in nonsuiting the plaintiff, and that the nonsuit must be set aside, with costs, to abide the event.

Motion granted.